**BLISS HOTEL COMPANY, Plaintiff in Error,**

**v.**

**Glen THOMPSON, County Assessor of Tulsa County, Oklahoma, Defendant in Error.**

**No. 39800.**

Supreme Court of Oklahoma.

Oct. 30, 1962.

Rehearing Denied Jan. 29, 1963.

**320**

Rosenstein, Mesirow & Fist, Tulsa, for plaintiff in error.

David Hall, County Atty., Donald D. Cameron, Asst. County Atty., Tulsa, for defendant in error.

JOHNSON, Justice.

This appeal is from a judgment of the District Court of Tulsa County concerning the 1960 ad valorem assessment of the real estate, improvements and business personal property of the Bliss Hotel Company.

The Bliss Hotel, located at 123 South Boston Street in the City of Tulsa, Oklahoma was constructed in 1930. In July, 1959, it was placed with an operating company for sale. Early in 1960 this company received an offer of $205,000.00 for the hotel and contents (furniture). A contract of sale was made April 5, 1960, and the sale was consummated on June 1, 1960.

The tax assessment for the year 1960, made as of January 1st, on the real estate was on the basis of a valuation of $601,-366.00, while the contents were assessed on the basis of a valuation of $84,090.00. Within the formula provided in Section 8, Article 10 of the Constitution, the property was assessed at a total of thirty percent of $685,-456.00 or $205,636.80.

In due time the Bliss Hotel Company filed separate protests before the Board of Equalization of Tulsa County against both assessments. The Board of Equalization reduced the value of the improvements but refused to make any other adjustments. The final appraised value was $485,433.00 on the real estate and improvements, with no change in the assessed value of the personalty. The total assessment was then thirty percent of the above figures, or a total assessment of $170,856.90. This assessment was appealed to the District Court which affirmed the action of the Equalization Board, and this appeal follows. Before the cases were tried in the District Court, the Bliss Hotel Company paid the full amount of taxes involved to the County Treasurer of Tulsa County, Oklahoma, under protest.

The question involved requires an answer to this question: May the value fixed by the assessor and board of equalization ($170,-856.90) prevail over the actual bona fide sale price (30% of $205,000.00) or $61,-500.00)?

From the statements of counsel there is no dispute about the following facts:

1. This property actually sold at an "arms length" sale for $205,000.00.

2. The contract was made April 5, 1960. The sale was consummated June 1, 1960. There was no change in the value of the property between January 1, 1960 and June 1, 1960.

With these facts in mind, we must consider the constitutional provision of Section 8, Article 10, which reads as follows:

"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale, except real property and tan-

gible personal property shall not be assessed for taxation at more than thirty-five per cent (35%) of its fair cash value, estimated at the price it would bring at a fair voluntary sale; and any officer or other person authorized to assess values or subjects for taxation, who shall commit any wilful error in the performance of his duty, shall be deemed guilty of malfeasance, and upon conviction thereof shall forfeit his office and be otherwise punished as may be provided by law."

The taxing authorities in Tulsa County have adopted thirty percent as the proper percentage to be applied.

The contentions of the parties to this appeal may be summarized as follows:

The plaintiff in error, hotel owner, contends that for the purpose of ad valorem tax assessment a voluntary arms length sale of the property in question at or near the assessment date is the best and controlling evidence of the term "fair cash value estimated at the price it would bring at a fair voluntary sale."

The defendant in error, county assessor, contends that such valuation may be the "best" evidence but that uniformity and equality as required by the 14th Amendment of the Federal Constitution take precedence over the constitutional requirements of Article 10, Section 8 of the Oklahoma Constitution, where compliance with both provisions is impossible.

While it is true that uniformity should prevail, the uniformity should conform to the correct assessments and not to the ones which are overvalued. If the rule contended for were adopted as the criterion, the assessor might value properties at any figure he desired, so long as all properties were assessed on the same basis, no matter what degree of error was involved. With this contention we do not agree.

It is incumbent upon us, therefore, to determine whether the premise advanced by the plaintiff in error is correct. Two elements in the quoted constitutional phrase,

supra, namely: "fair cash value" and "fair voluntary sale" require our interpretation.

■ In connection with these, we find no constructions made by this court of this exact language, and we are therefore relegated to the opinions of other jurisdictions. We believe that the interpretation adopted in the Massachusetts case of Assessors of Quincy v. Boston Consolidated Gas Co., 309 Mass. 60, 34 N.E.2d 623, is legally sound. Therein it was said:

"The tax base is the fair cash value of the property. Fair cash value in our taxing statutes has been construed to mean fair market value, which is the price that an owner willing but not compelled to sell ought to receive from one willing but not compelled to buy * * *."

We think that this phrase is synonymous with "fair market value" which has been defined by this court in City of Tulsa v. Creekmore, 167 Okl. 298, 29 P.2d 101, as follows:

"By fair market value is meant the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the land was adapted and might in reason be applied."

In connection with the second phrase, it must be observed that the constitutional provision makes it mandatory that the assessment should be estimated at what it would bring at such a sale. There is practically no diversity of opinion among American courts concerning the meaning of this phrase "fair voluntary sale."

■ A "fair voluntary sale," in our judgment, is synonymous with the type of sale described in the quotation from the City of Tulsa v. Creekmore case, supra. The briefs in this case virtually concede that this was a bona fide, arms length sale. This being true, we are impressed with the following language from a very similar case from the State of Wisconsin, State ex rel. Evansville

Mercantile Association v. City of Evansville, 1 Wis.2d 40, 82 N.W.2d 899:

"* * * This was the best offer they could get for it and we find in the record no reason to suppose that it would bring any more from any buyer willing but not obliged to buy or that there are any special circumstances which depressed the price. The intrinsic value may have been greater, but it is the sale value which controls assessments. State ex rel. Northwestern Mutual Life Ins. Co. v. Weiher, supra [177 Wis. 445, 188 N.W. 598]; State ex rel. New Lisbon State Bank v. City of New Lisbon, 1952, 260 Wis. 607, 51 N.W.2d 509. The owners were willing but not obliged to sell. We conclude that the fair market value was established by this sale and that other evidence tending to show what market value might be, which might be resorted to in the absence of such a sale, may not be used here to overthrow the evidence of the market itself. * * *"

Before the adoption of the Constitutional provision herein involved, Oklahoma property was assessed at its fair cash value. This rule has not been changed, except percentage wise. In commenting upon such valuation, this court said in Wilkin v. Board of Com'rs of Oklahoma County et al., 77 Okl. 88, 186 P. 474:

"Section 8, art. 10, Williams' Constitution, provides that 'all property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale. * * *'"

This same rule is applicable here in fixing the value before applying the constitutional percentage now provided for. We are of the opinion and hold that the actual bona fide, arms length sale price absent any special depressing circumstances was close enough in point of time and was under the facts and circumstances in this case competent and substantial evidence of the value, and under the record in this case was controlling.

We hold that the judgment of the court was against the clear weight of the evidence.

Judgment reversed with directions to enter judgment fixing the assessed valuation of the properties involved here at thirty percent (30%) of the sale price, to-wit: Thirty percent (30%) of $205,000.00 or $61,500.00, on both realty and contents, and ordering a refund of taxes paid on excess.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JACKSON, IRWIN and BERRY, JJ., concur.